UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BLAKE KENNEDY, | No. C 10-4498 CRB (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| GREG LEWIS, Warden, | |
| Respondent. | |

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2006, a Santa Clara County Superior Court jury found petitioner guilty of aggravated assault on a peace officer, being a felon in possession of a firearm, willful discharge of a firearm, shooting into an inhabited dwelling, exhibiting a firearm at a peace officer, and possession of a short-barreled shotgun. Consequent to the verdicts, he was sentenced to a term of 52 years and 4 months in state prison. Petitioner was denied relief on state judicial review. This federal habeas petition followed.

Evidence presented at trial showed that in 2005, petitioner shot at two police officers (Dominguez and Banuelos of the California Highway Patrol) while they pursued him after he fled from a van the police had stopped.[1] Alerted by a neighbor's 911 call, the police found petitioner later that night hiding on a shed on the neighbor's property. (Ans., Ex. B at 2–3.)

Prior to fleeing, petitioner abandoned a backback, which contained various items, including a cell phone and a baseball cap with "Cali F.U. Thug" written under the bill. The cell phone, which belonged to petitioner's mother,[2] contained photographs of petitioner. Two photographs showed petitioner wearing a baseball cap with "Cali F.U. Thug" printed under the bill. A third showed petitioner with Carlos Orozco, the driver of the van from which petitioner fled. (Id. at 2–5.) The cell phone evidence became the subject of one of several discovery disputes. The defense eventually received all the discovery it had requested, including the cell phone, though the defense was unable to inspect the phone with its own expert. (Id. at 14–15.)

Orozco was thrice interrogated prior to trial. At the first and second interrogations, he said that he knew who "the runner" was, but refused to name him, fearing retaliation.[3] At the

---

[1] No gunshot residue was found on petitioner. (Ans., Ex. B at 7.)

[2] Petitioner asserts that the cell phone entered as evidence at trial was not his mother's, and appends a document to his petition in support of this assertion. (Pet., Ex. B.) The document appears to be a request by petitioner's mother, Dorothy Kennedy, for a rebate on a cell phone purchased in 2004. According to petitioner, the model and serial numbers on the rebate are not the same as the model and serial numbers of the phone entered into evidence at trial. **It is undisputed, however, that the telephone number associated with each phone is.** While the rebate appears to show that in 2004 Dorothy Kennedy possessed a cell phone different from the one entered into evidence at trial in 2006, this does not prove that the cell phone used at trial was not the one recovered from the crime scene or that that same phone was not Kennedy's. First, evidence presented at trial demonstrated that the phone entered into evidence was Dorothy Kennedy. Second, the rebate does not exclude the possibility that Kennedy purchased another phone after she purchased the one listed on the rebate. Such conclusion is bolstered by Dorothy Kennedy's testimony at trial. She testified that "she bought several cell phones for [petitioner] because he tended to lose or break them," the last one in January 2005, that is, after the 2004 rebate appears to be have been created. (Ans., Ex. B at 31.) Insofar as petitioner bases a claim on the rebate exhibit, it is DENIED.

[3] Orozco first testified that he did not know petitioner. However, when shown photographs of the two together, he testified that he did know petitioner and that petitioner had been to his house. (Ans., Ex. B at 6.)

third, he admitted petitioner was the runner, and admitted that he told petitioner to run because he knew that petitioner "had some problem with the police."[4] At trial, however, Orozco disavowed his prior statements, named another man, Montez, as the person in the van with him, and did not recall whether anyone else fled the van or his telling anyone to run.[5] (Id. at 5–6.)

As grounds for federal habeas relief, petitioner alleges that (1) the prosecutor failed to comply with a pre-trial discovery order; (2) the trial court admitted improper evidence; (3) the trial court improperly denied a motion for a continuance; and (4) there was insufficient evidence to support his convictions.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially

---

[4] In addition to the events of the night, petitioner's detention was based on an outstanding arrest warrant on unrelated charges. (Ans., Ex. E, Vol. 8 at 1777.)

[5] This was not the only time Montez's name came up. When petitioner was presented to Officer Banuelos at the scene, he could not identify him as the runner. At trial, Banuelos testified that he could not identify petitioner as the runner because he thought Montez, whom he knew, was that person. (Ans., Ex. B at 4.)

indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

**I.   Brady Claim**

Petitioner claims that the prosecutor failed to disclose evidence favorable and material to the defense, in violation of his due process rights under Brady v. Maryland, 373 U.S. 83 (1963).

The record shows that the prosecutor, for whatever reason, was tardy in allowing the defense access to certain evidence. "The process of discovery," according to the state appellate court, "was a difficult, if not frustrating experience for defense counsel": "Some discovery was delayed — e.g., the phone, the chain of custody, some information stored on the phone — and other discovery never came — e.g., other photographs and videos stored on the phone, Orozco's whereabouts prior to trial, and telephone records of Orozco's residence." (Ans., Ex. B at 19.) The trial court denied a pretrial defense motion for sanctions, yet allowed the defense the opportunity to request a continuance mid-trial if it required time to research any late-arriving discovery materials. In the event, the defense made no such motion. After the verdicts had been rendered, petitioner moved for a new trial on grounds that the prosecutor failed to provide timely discovery. The defense conceded that prejudice could not be shown, and the trial court denied the motion. (Id. at 19–20.)

1    Despite the dilatory evidentiary disclosures, the state appellate court denied
2 petitioner's Brady claims. Petitioner failed to show that any of the evidence "was
3 exculpatory, would have bolstered a defense, weakened the prosecution, impeached a
4 prosecution witness, or otherwise been favorable." More specifically:

> [W]ithout knowing the content of the undisclosed videos, photographs, and call logs stored on the cell phone that [petitioner] ultimately discovered, it would be pure speculation to find that they would have helped [petitioner] show that the cell phone was not his, he did not have the phone that day, someone else may left the phone at the scene, or [petitioner] was not at the scene or in the area at the time of the incident. Similarly, it would be pure speculation to find that if Orozco's custodial status had been disclosed prior to trial, the defense would have obtained a statement that bolstered the defense, corroborated Orozco's exculpatory statements and testimony, or undermined his incriminatory statements about [petitioner] to [the police]. Finally, without any information concerning the contents of Orozco's residential phone records, it is impossible to say that they would have confirmed or rebutted anything that Orozco said about the incident.
>
> We further observe that if, for example, the videos, other photographs, and various logs stored on the phone that [petitioner] later learned about [ ] were, in fact, favorable and material, one would have expected [petitioner] to point this out in his motion for new trial. However, at that time, counsel conceded that he could not show prejudice based on the denial of discovery. Similarly, if [petitioner] did not discover that the phone contained favorable and material evidence until after judgment was entered, one would have expected him to file a petition for a writ of habeas corpus in connection with this appeal based on trial counsel's failure to discover this crucial evidence sooner. However, there is no petition.
>
> In short, [petitioner] fails to establish, and we do not find, a Brady violation.

(Ans., Ex. B at 19–20.)

   Under Brady, the prosecution must disclose material evidence "favorable to an accused," id. at 87, even if the accused has made no request for the evidence in question. United States v. Agurs, 427 U.S. 97, 110–11 (1976). In order to establish a Brady violation, petitioner must show that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence had been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. Banks v. Dretke, 540 U.S. 668, 691 (2004). Delay in disclosure does not itself violate due process, which requires only the disclosure of exculpatory material at a time when the defendant may make effective

use of the material. Reiger v. Christensen, 789 F.2d 1425, 1432 (9th Cir. 1986).

Habeas relief is not warranted here. The state appellate court reasonably determined that petitioner failed to establish at least two Brady elements. First, there has been no showing that the evidence had exculpatory or impeachment value. Petitioner makes no such showing, and defense counsel's new trial motion contained no such demonstration. Also, defense counsel declined the trial court's offer of a mid-trial continuance. Had the late-arriving evidence been valuable to the defense, surely defense counsel would have accepted the trial court's invitation. Also, the state appellate court determined that "there is no evidence that the phone had been planted at the scene after the incident, the phone had been tampered with, someone had stored photographs of [petitioner] on the phone after it was found, or it was possible to do so without revealing the date on which that was done." (Ans, Ex. B at 38.)

Second, petitioner's failure to show any Brady material value dooms any claim of prejudice. Petitioner fails to show that earlier disclosure raises even a reasonable possibility that the outcome of the trial would have been different. This conclusion is bolstered by defense counsel's declination of a mid-trial continuance, and by the paucity of persuasive evidence adduced in his new trial motion.

Petitioner's discovery claims are part of his implied contention that the evidence against him was weak or unreliable, or both. This is another way of asserting that the jury's factual determinations are invalid. This Court, however, must accord the jury's credibility determinations near-total deference. Jackson v. Virginia, 443 U.S. 307, 326 (1979). Indeed, if confronted by a record that supports conflicting inferences (as petitioner contends here), a federal habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. Defense counsel was free to attack the reliability of the evidence, and to encourage the jury to reject the state's case.

Petitioner's claim is DENIED.

## II. Admission of Cell Phone Evidence

Petitioner claims that the trial court's admission of the cell phone and the evidence procured from it violated his right to due process. Such evidence was rendered inadmissible because the prosecutor failed to show a continuous chain of custody of the cell phone evidence, that is, "who found it and where it was found." The state appellate court found the trial court's reasons for admission persuasive, and rejected the claim:

> Here, Deputy Yenchik testified that the scene had been secured by the time he arrived, he did a walk-through, and he took photographs. When he first photographed the backpack, it was closed, and nothing was on top of it. Later, however, it had been unzipped, certain items had been placed on or near it, and he photographed them. He explained that after each item was photographed, it was put into a numbered bag that described its contents. Thereafter, the bags were taken to the sheriff's office and booked into a secure property room. He explained that chain of custody records are kept to show who has had contact with a piece of evidence and establish that it is the evidence obtained from the scene.
>
> Investigator Hernandez testified that he took custody of the bag with the phone from the evidence locker at Santa Clara County Sheriff's Department on May 10, 2005. He used the phone to track down its owner. Upon observing photographs stored on it, he took the phone to the San Jose Police Department's forensic unit to have the photographs retrieved. After the photographs were retrieved, he took the phone to the district attorney's office, where it was booked into the property room. He identified Exhibit 36 as the cell phone. He also identified his initials and dates on the chain of custody on the envelope.
>
> Although there is no documentary evidence of the chain of custody from when the cell phone was first found to the time Investigator Hernandez took custody of it, we do not find that the gap in documentary evidence rendered the cell phone inadmissible as a matter of law. Deputy Yenchik testified generally that the items were delivered to the property room at the sheriff's department, where Investigator Hernandez took custody of it. It is undisputed that the phone is registered to [petitioner]'s mother and that it contained photographs of [petitioner]. Finally, there is no evidence that the phone had been planted at the scene after the incident, the phone had been tampered with, someone had stored photographs of [petitioner] on the phone after it was found, or it was possible to do so without revealing the date on which that was done.
>
> Taking all the circumstances into account, including the ease or difficulty with which the particular evidence could have been altered, the trial court could conclude with reasonable certainty that the phone had not been tampered with and that the circumstances under which the phone was found and the deficiencies in the chain of its custody affected its weight and not its admissibility.

(Ans., Ex. B at 37–38.)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

Habeas relief is not warranted here. First, petitioner has not shown that "chain of custody" allegations implicate his clearly established federal constitutional rights. Second, his allegations raise no doubt about the evidence's relevance or admissibility. As the state appellate court concluded, the phone was tied to petitioner by his mother's ownership of it, and the photographs contained on it. Third, the defense was free to impugn the cell phone evidence on chain of custody grounds, and the jury could weigh such considerations in its evaluation of the evidence's persuasiveness. Fourth, these same reasons show that the jury could make a permissible inference from the evidence, that is, that the phone was tied to petitioner. Fifth, as noted above, the state appellate court reasonably determined that there was no evidence that the cell phone was planted or tampered with. In sum, it is clear from this record that the state appellate court's rejection of petitioner's claim was reasonable. This claim is DENIED.

### III.   Denial of a Continuance

On the first day of trial, defense counsel moved for a continuance on grounds that unresolved discovery disputes prevented him from mounting an effective defense. The trial court denied the motion, but it stated that it would allow a mid-trial continuance if the defense requested one and required time to examine the late-arriving discovery materials. In the event, defense counsel made no such motion. Petitioner claims that the denial of the continuance on the first day of trial violated his due process right to present a defense, and his Sixth Amendment right to the effective assistance of counsel.

The state appellate court rejected these claims:

> We find no abuse of discretion in this case. The [trial] court noted that many of the discovery related issues had been resolved, prospective jurors had been assembled, and jury selection was imminent. Moreover, defense counsel did not explain what specific matters he needed more time to prepare for; how much time he needed; and why, if the situation were so dire, he had not accepted the court's invitation for a continuance before prospective jurors were brought in. Counsel simply asserted that he needed a continuance because it "appeared" he would be unable to mount an effective defense.
>
> . . . .
>
> The record reveals that counsel ultimately received most, if not all, of the discovery he had sought. He used [petitioner]'s outstanding [arrest] warrant to suggest that [petitioner] had a reason to be hiding when police found him other than that he had just fired a shotgun. Counsel received the only documentation there was concerning the chain of custody for the cell phone and exploited both the lack of more complete documentation and the fact that the prosecution had failed to show who first found the cell phone, where it was found, and how it suddenly ended up on top of the backpack to cast doubt on the connection between the phone and [petitioner]. Moreover, counsel got access to the cell phone. Although after trial, counsel complained that his inspection of the phone was inadequate because he did not have an expert with him and did not know how to use the phone, counsel did not seek a mid-trial continuance, as the court had invited him to do, to have his expert examine and retrieve information stored on the phone. Nor did counsel seek a continuance for any other purpose related to discovery. Although [petitioner] claims on appeal that counsel rendered ineffective assistance for a variety of reasons, the failure to seek a mid-trial continuance to more effectively prepare his defense is not one of them. Lastly, [petitioner] provides neither argument nor authority to show how the denial of a continuance on the day scheduled for jury selection was prejudicial.

(Ans., Ex. B at 14–15.)

To establish a constitutional violation based on the denial of a continuance motion, a petitioner must show that the trial court abused its discretion, which will be found if, after carefully evaluating all relevant factors, the denial was arbitrary or unreasonable. See Armant v. Marquez, 772 F.2d 552, 556 (9th Cir. 1985). The relevant factors are: (1) whether the continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5) whether a denial would prejudice the defendant. See U.S. v. Mejia, 69 F.3d 309, 314 (9th Cir. 1995). But the ultimate test remains whether the trial court abused its discretion through an "unreasoning

1  and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay."
2  Houston v. Schomig, 533 F.3d 1076, 1079 (9th Cir. 2008) (quoting Morris v. Slappy, 461
3  U.S. 1, 11–12 (1983)) (internal quotation marks omitted).

Habeas relief is not warranted here because the Mejia factors weigh against petitioner. First, it was reasonable to conclude that a continuance on the first day of trial would inconvenience witnesses, the court, counsel, or the parties. A jury was ready to hear the matter, witnesses were ready to testify, and the court and the prosecutor were set for trial. The Supreme Court accords trial courts wide latitude "in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." United States v. Gonzalez-Lopez, 548 U.S. 140, 152 (2006) (internal citations omitted). Second, previous continuances had been granted, mostly because of delays in discovery. Despite these delays, defense counsel had nearly all the discovery he had requested by the time of trial. The circumstances regarding the final bit of discovery — inspection of the cell phone by his experts — does not weigh in his favor. As noted above, the cell phone was unquestionably linked to petitioner. This undisputed evidence defeats any attempt to show prejudice or any attempt to demonstrate that there were legitimate reasons for a continuance. Accordingly, this claim is DENIED.

## IV.    Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to prove that he fired a gun at the police officers. According to him, this evidentiary insufficiency renders all his convictions (assault, shooting at an inhabited dwelling, and exhibiting a firearm at a police officer) constitutionally invalid.[6] The state appellate court detailed his claim as follows:

> [Petitioner] notes that according to Officers Dominguez and Banuelos, they chased a person down the alley, he struggled unsuccessfully to open the fence gate, turned, pointed his gun at them, and fired. Officer Dominguez said he was 15 feet away; Officer Banuelos said he was 25 to 30 feet away.

---

[6] Because petitioner challenges only whether there was sufficient evidence to support the existence of this element, the Court need not address whether there was sufficient evidence of the other elements of these crimes.

> [Petitioner] points out, however, that the physical evidence and testimony of Deputy Yenchik refutes their testimony and established instead that (1) the shotgun was not fired at or near the gate but over 20 feet past and south of the gate; (2) the shot was not fired straight back down the alley at the officers but toward the fence and neighboring house; and (3), when the shot was fired, Officer Banuelos was between 49 and 63 feet away and Officer Dominguez was behind the corner of a house. Given these undisputed facts, [petitioner] claims that it was impossible for the single shot to support the four convictions.

(Ans., Ex. B at 8–9.) The state appellate court ultimately was not persuaded, however, and rejected the claim:

> Here, we agree that the physical evidence refutes the officers' testimony concerning where the shotgun was fired, how far away the officers were, and whether the gate was open or closed when the shot was fired. Indeed, Officer Dominguez conceded that his testimony on these issues could not be reconciled with the physical evidence. And, during final argument, the prosecutor similarly conceded that some of the officers' testimony was inaccurate.
>
> Nevertheless, the jury was not required to reject all of the officers' testimony simply because the physical evidence refuted parts of it. [Footnote omitted.] It is undisputed that the officers pursued a man who had run south down a darkened alley between two houses. They said the man turned north and had a weapon pointed in their direction. Officer Dominguez immediately took cover and Officer Banuelos slipped and fell as the man fired. According to Deputy Yenchik, the shotgun blast originated from slightly behind the hole in the fence, traveled upward and mostly west, but slightly north, hitting the fence and continuing through it to the house on the other side. FN4
>
> FN4. [Petitioner] asserts that the shotgun was not fired in a northerly direction. However, Deputy Yenchick repeatedly testified that the shot had a slightly northerly trajectory. Although he later testified that there was no evidence that the shot was fired directly north toward the street, that testimony did not negate or undermine his prior analysis of its trajectory.
>
> We note that during final arguments, the prosecutor reiterated that analysis, arguing that the shot was fired in an east to west and slightly northerly direction. There was no objection that the argument misstated the evidence. On the contrary, in his argument, defense counsel confirmed that the shot did not solely travel east to west.
> Given the evidence, the jury reasonably could find that, in extremely rapid sequence and without stopping his flight, [petitioner] turned at least part of his body holding a gun toward the officers with the intent to deter them, they reacted as he fired, and he successfully escaped. However, because he was continuously moving, his shot was ill aimed and went mostly through the fence next to him, hitting the house and window. This view of evidence and events supports the convictions for assault, the enhancements for discharging a firearm during the assault, and the convictions for exhibiting a firearm at a peace officer. Alternatively, jurors could have accepted the prosecutor's scenario that as [petitioner] ran down the alley, he did not turn but simply pointed his gun behind him and fired.

(Id. at 10–11) (one footnote omitted).

When reviewing a state court's conviction, a federal court must determine only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. Id. at 324. In sum, "the only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012).

Petitioner was convicted of assault, shooting at an inhabited dwelling, and exhibiting a firearm. All three offenses contain a firearm element: use, discharge, or exhibition, respectively. See Cal. Penal Code §§ 245(d)(1), 246, and 417.8.

Sufficient evidence existed to support petitioner's convictions. There was clear testimony that a gun was used, fired, and exhibited. As the state court noted, the jury was free to credit some aspects of a witness's testimony, and reject others. There was confused testimony as to the direction of the gun, etc., and the defense was able to exploit the weaknesses in the prosecution's case. The jury, though, decided not to agree with the defense. On such a record, the jury's finding was not so insupportable as to fall below the bare threshold of rationality. Coleman, 132 S. Ct. at 2065. The state appellate court's rejection of his claim was reasonable. Accordingly, petitioner's claim is DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: June 12, 2013

CHARLES R. BREYER
United States District Judge